IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.:  1:25-CV-00346-KAS

VENUS WRIGLEY,

Plaintiff,

v.

STATE FARM FIRE AND CASUALTY COMPANY,

Defendant.

## AMENDED COMPLAINT AND JURY DEMAND

COMES NOW Plaintiff, Venus Wrigley, by and through counsel, Sandomire & Kuberry, PLLC, and Livenick Law, LLC, and for her Complaint and Jury Demand, states:

## PARTIES

1. Plaintiff, Venus Wrigley (hereinafter, "Plaintiff"), is and was at all times relevant to this Complaint, a resident of the State of Colorado.

2. At all times relevant, Defendant State Farm Fire & Casualty Company (hereinafter "Defendant") was an insurance company, with a principal address of 1 State Farm Plaza, Bloomington, Illinois 61702.  Defendant State Farm Fire & Casualty Company is registered in good standing in the State of Colorado. Its registered agent is Corporation Service Company, 1900 West Littleton Boulevard, Littleton, Colorado 80120.

## JURISDICTION AND VENUE

3. The Court has jurisdiction over the parties and subject matter herein as the breach occurred in Adams County, the amount in controversy is in excess of $75,000.00, and there is diversity of citizenship of parties.

## GENERAL ALLEGATIONS

4. Plaintiff incorporates each and every allegation above, as though fully set forth herein.

5. At all times relevant to this matter, Plaintiff owned and lived at 3151 West 65th Avenue, Denver, Colorado 80221.

6.      At all times pertinent, Defendant was the insurer for the homeowners insurance coverage for the Plaintiff under policy number 06-ER-U821-9, insuring Plaintiff $334,400 for dwelling, $33,440 for other structures, $250,800 for personal property and actual losses for loss of use..

7.      On or about December 24, 2022, due to freezing temperatures, a waterline in the crawl space of the home froze and burst.

8.      It was estimated that over 1,500 gallons of water was present in the crawl space.  It took several months to remove all of the water and dry out the crawl space.

9.      Plaintiff promptly informed State Farm of the flooding and scheduled water removal as soon as possible.

10.     Plaintiff's home was deemed uninhabitable due to damage to the radon mitigation system being damaged and water damage to the crawl space.

11.     On or about March 20, 2023, State Farm sent Plaintiff a letter regarding her claim, stating that a structural engineering inspection was pending assignment and asking her to forward her living expenses to date as well as when the vapor barrier would be completed.

12.     State Farm sent an engineer, Tristan Burm to inspect the house and provide a written report, which was completed in June of 2023, approximately three months later.

13.     State Farm then sent a second engineer, Wenzhou "Jack" Ding from Pacific Engineering and Risk Consulting Group Inc., on or about October 3, 2023 to inspect and provide his repair plan.

14.     Upon information and belief, Wenzhou "Jack" Ding is a professional engineer licensed in the state of California but not licensed in the state of Colorado; nevertheless, State Farm accepted his report on December 26, 2023.

15.     Plaintiff then scheduled two foundation repair companies, HomeStrong and Van Matre, both located and licensed in Colorado, to inspect the crawl space and provide their suggested method of repair to remedy the foundation issues.

16.     The reports from both HomeStrong and Van Matre differed significantly from the repairs proposed by Jack Ding of Pacific Engineering.

17.     Plaintiff then provided both HomeStrong and Van Matre with a copy of the report from Jack Ding.

18.     Both HomeStrong and Van Matre stated the report from Jack Ding was not the appropriate and/or correct repair for Plaintiff's home specifically, not for the type of soil in Colorado. Van Matre further stated that foam injection is never used for foundation stabilization.

19.    Plaintiff then contacted State Farm again regarding the professional opinions of HomeStrong and Van Matre and how their opinions were in opposition to the repairs Jack Ding proposed to remedy Plaintiff's foundation problems.

20.    The claims adjuster spoke with her supervisor and informed Plaintiff State Farm would find a company to do the repairs suggested by Jack Ding.

21.    Plaintiff explained to the claims adjuster that she did not need help finding a company to do the job correctly, but asked to have the case reviewed so she, the Plaintiff, could verify Jack Ding's suggested repair plan.

22.    Plaintiff then stated she would hire her own engineer.

23.    State Farm agreed to pay all of Plaintiff's living expenses, gas, and displacement rent starting in December 2022 until the foundation was repaired.

24.    Upon information and belief, Plaintiff's policy states

> **Additional Living Expense.** When a *loss insured*
> causes the *residence premises* to become uninhabitable,
> *we* will pay the reasonable and necessary
> increase in cost incurred by an *insured* to maintain
> their normal standard of living for up to 24 months.
> *Our* payment is limited to incurred costs for the
> shortest of:
> a. the time required to repair or replace the premises;
> b. the time required for *your* household to settle
> elsewhere; or
> c. 24 months.
> This period of time is not limited by the expiration of
> this policy."

23.    Plaintiff's home was not habitable due to the vapor barrier and radon system being damaged during the flood as well as the unstable foundation.

25.    State Farm paid Plaintiff for only gas and food from December 2022 through January 3, 2023.

26.    State Farm then informed Plaintiff she would not be receiving any compensation for any living expenses because of an inspection of her home on a separate claim in 2024.

27.    Pursuant to the homeowner's policy and State Farm's letter of March 20, 2023, Plaintiff should have been compensated for her living expenses through at least March 20, 2023.

28.    Plaintiff hired an engineer named Dillon Fox who noted several concerns with Jack Ding's report.  Mr. Fox stated Mr. Ding's measurements of Plaintiff's home were incorrect and his engineering report was not stamped with his authorization to operate in Colorado.

29.    Upon information and belief, the homeowner's policy stated as follows:
*"we* will pay only for repair or replacement of the damaged part of the property with common construction techniques and materials commonly used by the building trades in standard new construction."

30.    The report by Jack Ding did not contain recommendations for repair or replacement with common construction techniques and materials commonly used by the building trades in standard new construction.

## FIRST CLAIM FOR RELIEF
### Breach of Contract

31.    Plaintiff incorporates each and every allegation above, as though fully set forth herein.

32.    Plaintiff has complied with all conditions precedent to coverage under the insurance policy issued by Defendant to Plaintiff.

33.    To the extent that Plaintiff has failed to comply with any contractual obligation, Defendant has not been prejudiced by the failure to comply.

34.    To the extent that Plaintiff has failed to comply with any of the contractual obligations, Defendant may not rely on this failure to comply because it breached one or more material obligations under the policy prior to any alleged failure to comply of Plaintiff.

35.    At all times relevant to this action, Defendant owed to Plaintiff the implied duty of good faith and fair dealing in the insurance contract.

36.    Defendant has breached its contract with Plaintiff by failing to homeowner's insurance benefits in an amount to which Plaintiff is entitled.

37.    Specifically, State Farm had the duty to pay Plaintiff her living expenses until at least March 20, 2023, and breached the same by only paying Plaintiff her gas and food expenses until January 3, 2023.

38.    Defendant has breached its contract with Plaintiff by failing to adequately repair her foundation.

39.    Specifically, Defendant had the duty to repair or replace with common construction techniques and materials commonly used by the building trades in standard new construction and refused to do so.

40.     As a direct and proximate result of Defendant's breach of contract, Plaintiff has incurred damages as set forth herein, specifically including, but not limited to, over $129,380.00 for foundation repair, and cost of living expenses in an amount to be proved at trial.

**SECOND CLAIM FOR RELIEF**
**Bad Faith Breach of an Insurance Contract**

41.     Plaintiff incorporates each and every allegation above, as though fully set forth herein.

42.     As providers of insurance services to the public, Defendant at all times had a duty to be actuated by good faith and fair dealing in everything pertaining thereto, abstain from deceptive or misleading practices and keep, observe, and practice the principles of law and equity in all matters pertaining to the business of insurance.

43.     Under Colorado law, every insurance contract contains an implied covenant of good faith and fair dealing and imposes on insurers a duty to act in good faith with their insureds. Pursuant to its implied duty of good faith and fair dealing Defendant owed to Plaintiff an obligation to treat Plaintiff's interests with equal consideration to their own interests.

44.     Defendant has breached its duty of good faith and fair dealing owed to Plaintiff, including, but not limited to:

     a. Failing to give equal consideration to the interest of Plaintiff, its insured, specifically in not considering her contractors or engineer's reports;

     b. Unreasonably delaying and/or withholding benefits under the insurance policy without a reasonable basis for delaying and/or withholding benefits, with knowledge or reckless disregard of lack of reasonable basis for delaying and/or withholding benefits, specifically in not fully paying Plaintiff's living expenses, refusing to pay for proper remediation for the location and climate of the house and taking nearly a year to agree to commence repairs;

     c. Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under the insurance policy, specifically by taking nearly a year to agree to commence repairs;

     d. Not attempting good faith to effectuate prompt, fair and equitable settlements of claims in which liability had become reasonably clear specifically in not fully paying Plaintiff's living expenses, refusing to pay for proper remediation for the location and climate of the house and taking nearly a year to agree to commence repairs;

e.  Compelling Plaintiff to institute litigation to recover amounts due under the insurance policy by offering less than the amount the Plaintiff is entitled to recover;

f.  Forcing Plaintiff into the costly and lengthy process of litigation;

g.  Failing to acknowledge and act reasonably and promptly upon communication with respect to claims arising under insurance policies, specifically by taking nearly a year to agree to commence repairs;

h.  Failing to provide a reasonable explanation of the basis in the insurance policy in relation to the fact or applicable law for denial of a claim for the offer of a compromise settlement;

i.  Any further acts which may be discovered.

45.  Defendant's failure to pay over $129,380.00 for foundation repair and reasonable cost of living expenses is an unreasonable delay and/or withholding of benefits under the insurance policy and constitutes bad faith.

46.  Defendant taking nearly a year to agree to commence repairs is an unreasonable delay under the insurance policy and constitutes bad faith.

47.  Defendant's failure to consider the reports of two contracting and one engineering company hired by Plaintiff constitutes a failure to give equal consideration to Plaintiff's interests and constitutes bad faith.

48.  Defendant's denial of Plaintiff's claim as adequately compensated without further rationale or explanation constitutes bad faith.

### THIRD CLAIM FOR RELIEF
**Violation of C.R.S. § 10-3-1115(1)(a)**

49.  Plaintiff incorporates each and every allegation above, as though fully set forth herein.

50.  C.R.S. § 10-3-1115(1)(a) states "A person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant."

51.    Defendant's conduct and subsequent failure to offer settlement is an unreasonable delay and denial of full payment of a claim for benefits owed to Plaintiff a first-party claimant and violates C.R.S. § 10-3-1115(1)(a).

52.    Defendant's denial of Plaintiff's claim as adequately compensated without further rationale or explanation is unreasonable and a violation of C.R.S § 10-3-1115(1)(a).

53.    Defendant's denial of Plaintiff's living expenses as entitled under the homeowner's policy is unreasonable and a violation of C.R.S § 10-3-1115(1)(a).

54.    Defendant's failure to pay for repair or replacement with common construction techniques and materials commonly used by the building trades in standard new construction is unreasonable and a violation of C.R.S § 10-3-1115(1)(a).

55.    Pursuant to C.R.S. § 10-3-1116(1) Plaintiff is entitled to recover reasonable attorney fees and court costs and two times the covered benefits from Defendant.

**WHEREFORE**, Plaintiff, Venus Wrigley, prays for judgment against the Defendant in an amount to be proven at trial, together with statutory interest from the date of the injury, costs, expert witness fees and attorney fees and further relief as the Court deems just.

**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY**

Respectfully submitted this 28th day of February, 2025.

SANDOMIRE & KUBERRY, PLLC

*/s/ Jaynie Kuberry*
Jaynie R. Kuberry, #41511
561 Santa Fe Drive
Denver, CO   80204
Telephone:  303-300-3333
Facsimile:  303-300-3331
Email:  jaynie@303legal.com

*Attorneys for Plaintiffs*

LIVENICK LAW, LLC

*/s/ Torrey Livenick*
730 17th Street Suite 900
Denver, CO  80202
Email:  torrey@livenicklaw.com
        torrey@303legal.com

*Attorney for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 28th, 2025, I electronically filed and served the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following email address:

PATTERSON RIPPLINGER, P.C.
Hillary D. Patterson, #49039
Rae Marusin, #54601
5613 DTC Parkway, Suite 400
Greenwood Village, Colorado 80111
Phone: (303) 741-4539
hpatterson@prpclegal.com
rmarusin@prpclegal.com
Attorneys for Defendant                                        */s/Torrey Livenick*